**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION** | '25CV2837 BEN MSB |
| **This Document Relates To:** | Case No. 25-md-3149-BEN-MSB |
| *School District Direct Action Track* | MDL No. 3149 |
| **Civil Action No.:** | Judge Roger T. Benitez |
| | Magistrate Judge Michael S. Berg |
| | **SCHOOL DISTRICT DIRECT ACTIONS SHORT-FORM COMPLAINT AND DEMAND FOR JURY TRIAL** |
| | Designated Forum: **Eastern District of California** |

The Plaintiff named below files this *School District Direct Actions Short-Form Complaint and Demand for Jury Trial* ("*SFC*") against Defendants named below by and through their undersigned counsel. Plaintiff incorporates and adopts by reference the allegations, claims, and relief sought in the *School District Direct Action Plaintiffs' First Amended Consolidated Master Complaint* ("*FAMC*") as it relates to the named Defendants (listed below), filed in *In Re: PowerSchool Holdings, Inc. and PowerSchool Group, LLC Customer Security Breach Litigation*, MDL 3149 in the United States District Court for the Southern District of California. Plaintiff files this *SFC* as permitted by Case Management Order No. 5.

Plaintiff indicates by completing the below the Parties and Causes of Action specific to Plaintiff's case.

Plaintiff by and through its undersigned counsel, alleges as follows:

## I. DESIGNATED FORUM

1. For Direct Filed Cases: Identify the Federal District Court in which the Plaintiff would have filed and the date of the filing:

   District Court for Eastern District of California, October 21, 2025

2. For Transferred Cases: Identify the Federal District Court in which the Plaintiff originally filed and the date of filing:

## II. IDENTIFICATION OF PARTIES

**A. Plaintiff**

1. Name of the individual school district alleging claims against Defendant(s):

   Westerly Public Schools

2. Number of schools served in the Plaintiff's school district:

   Six

3. Number of minors served in the Plaintiff's school district:

   2,215

4. Plaintiff is a resident and citizen of which state:

   Rhode Island

**B. Defendants**

1. Plaintiff names the following Defendants in this action:

| NAME | CITIZENSHIP |
|---|---|
| Power School Holdings, Inc. | California |
| PowerSchool Group LLC | California |
| Bain Capital, L.P. | Massachusetts |
| Movate, Inc. | Texas |

2. For each "Other Defendant" Plaintiff contends are additional parties and are liable or responsible for Plaintiff's damages alleged herein, Plaintiff must identify by name each Defendant and its citizenship and plead the specific facts supporting any claim against each "Other Defendant" in compliance with the Federal Rules of Civil Procedure. In doing so, Plaintiff may attach additional pages to this *Short-Form Complaint*. Plaintiff names the following additional Defendants in this action:

| NAME | CITIZENSHIP |
|---|---|
| | |
| | |

## III. CAUSES OF ACTION ASSERTED

1. The following Causes of Action asserted in the *FAMC* and the allegations with regard thereto are adopted in this *Short-Form Complaint* by reference (*check all that are adopted*):

| Adopted | Cause of Action (COA) | Count Number | Asserted Against |
|---|---|---|---|
| x | Negligence | 1 | PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. |
| x | Unjust Enrichment | 3 | PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. |
| x | Violation of the Computer Fraud and Abuse Act | 4 | PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. |
| x | Fraudulent Concealment | 5 | PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. |

| Adopted | Cause of Action (COA) | Count Number | Asserted Against |
|---|---|---|---|
| x | Express Indemnity | 6 | PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. |
| x | Intentional Interference with Contractual Relations | 7 | Bain Capital, L.P. |
| x | Negligence | 8 | Movate, Inc. |
| x | Negligent Hiring, Training, Supervision, and Retention | 9 | Movate, Inc. |
| x | Breach of Contract | 10 | Movate, Inc. |
| x | Breach of Contract | 33 | PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. |
| x | Violation of Rhode Island's Unfair Trade Practice and Consumer Protection Act | 34 | PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. |

## IV. ADDITIONAL CAUSES OF ACTION

1. If Causes of Action are asserted in addition to those pleaded in the *FAMC,* those additional Causes of Action must be pleaded in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiff may attach additional pages to this *SFC*. Plaintiff asserts the following additional Causes of Action and supporting allegations against the following Defendants:

| Cause of Action (COA) | Count Number | Asserted Against |
|---|---|---|
| Fraudulent Misrepresentation | 47 | PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. |

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants and all such further relief that this Court deems equitable and just as set forth in the *FAMC* and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury to all claims in this action.

***

By signature below, Plaintiff's counsel hereby confirms their submission to the authority and jurisdiction for the United States District Court of the Southern District of California and oversight of counsel's duties under the Federal Rule of Civil Procedure 11, including enforcement as necessary through sanctions and/or revocation of pro hac vice status.

Signed: *_/s/ William B. Shinoff_*

Dated: October 22, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the clerk of the court for the United States District Court for the Southern District of California by using the CM/ECF system on October 21, 2025. I further certify that all participants in the case are registered CM/ECF users and that services will be accomplished by the CM/ECF system. I certify under penalty of perjury that the foregoing is true and correct.

Signed: *\/s/ William B. Shinoff*

Dated: October 22, 2025

# ATTACHMENT 1

## COUNT 47

## Fraudulent Misrepresentation

## (Against Defendants PowerSchool Holdings, Inc., PowerSchool Group LLC and Bain Capital)

## PUBLIC MISREPRESENTATIONS

1. Plaintiff Westerly Public Schools ("Plaintiff") realleges and incorporates by reference all allegations in the School District Direct Actions First Amended Consolidated Master Complaint as if fully set forth herein.

2. Defendants PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital L.P. (collectively "PowerSchool") are large commercial providers of cloud-based K-12 education software. Their flagship product, the Student Information System ("SIS"), is used by school districts to manage sensitive student and personnel Personal Identifiable Information ("PII"). PowerSchool publicly touts that it serves more than 17,000 customers in over 90 countries and supports over 55 million students, positioning itself as a leading steward of student data in the education sector.[1]

3. PowerSchool's SIS is its primary product which it markets as "one secure customizable platform providing the interoperability need to power your school and district operations with accurate student data."[2]

4. PowerSchool's business model is premised on the collection, maintenance, and management of highly sensitive PII of students, parents, educators, and school staff. This information is obtained through contracts with schools and school districts which implement Defendants' software and platforms

---

[1] *PowerSchool to be Acquired by Bain Capital in $5.6 Billion Transaction*, BainCapital, (June 7, 2024), https://www.baincapital.com/news/powerschool-be-acquired-bain-capital-56-billion-transaction?utm_source.

[2] *PowerSchool SIS*, PowerSchool, https://www.powerschool.com/student-information-cloud/powerschool-sis/#video (last visited Jan. 17, 2025).

in their educational systems. As a company specifically entrusted with sensitive PII, PowerSchool owes a duty and is required by state and federal law to protect it.

5. To induce school districts, including Plaintiff, to purchase, implement, and continue using its platforms to store and process the PII of students, parents, and staff, PowerSchool repeatedly made specific material representations on its website, "Security & Trust" pages, blogs, and school marketing materials about its privacy and security practices, including assertions that it maintains ISO/IEC 27001 certification and undergoes annual SOC 2 Type II examinations; that it is a "good custodian of student data";[3] and that it takes "all reasonable and appropriate countermeasures"[4] to protect the confidentiality, integrity, and availability of customer data. Each of these statements was material to Plaintiff's PowerSchool contract procurement and renewal decisions.

6. On June 20, 2023, PowerSchool published a blog listing the eight "best practices" for student data privacy.[5] The blog describes "How PowerSchool Provides Superior Student Data Privacy and Security" by listing privacy and security practices including achieving the International Standards Organization 27000 series certification and ensuring data residency "with no information going offshore."[6] In reality, PowerSchool lacked effective controls to ensure such data residency, rendering the statements false and misleading when made.

7. In August 2023, at the White House's "Back to School Safely: K-12 Cybersecurity and Data Privacy" Initiative, PowerSchool's CEO, Hardeep Gulati,

---

[3] *Cybersecurity, Data Privacy, & Infrastructure*, PowerSchool, https://www.powerschool.com/security/[https:web.archive.org/web/20241208221923/https://www.powerschool.com/security/].

[4] *PowerSchool SIS*, PowerSchool, https://www.powerschool.com/student-information-cloud/powerschool-sis/#video (last visited Jan. 17, 2025).

[5] *Student Data Privacy: Everything You Need to Know*, PowerSchool, https://www.powerschool.com/blog/student-data-privacy-everything-you-need-to-know/ (last visited Aug. 21, 2025) [hereinafter *Student Data Privacy*].

[6] *Id.*

boasted of the company's "relentless investment and focus on every element of security."[7] PowerSchool's blog linked to the event further amplified these assurances reiterating that it was "taking all reasonable and appropriate countermeasures to protect students' and teachers' data."[8] These statements were made with knowledge of their falsity and/or with reckless disregard for the truth.

8. For years, PowerSchool also falsely represented that it employed "a variety of physical, administrative, and technological safeguards designed to protect . . . data against loss, misuse, and unauthorized access or disclosure," and that it "consider[ed] the type and sensitivity of the data being collected, used, and stored, and the current state of technology and threats to data."[9] These statements were material to Plaintiff's decision to contract with PowerSchool, were made with knowledge of or reckless disregard for their falsity, and were intended to induce Plaintiff's reliance.

9. PowerSchool further represented that it "complies with privacy laws of the United States with respect to personal information and especially student educational records" and does "not use Student Data for any purpose other than to provide the services, in accordance with [its] contractual agreements with [its] Customers, [its] Terms of Service, and [its] Privacy Policy."[10] These representations were false, as PowerSchool failed to comply with applicable federal and state data-privacy obligations, did not implement its own stated safeguards, and did in fact use

---

[7] PowerSchool, *Hardeep Gulati at Dr. Jill Biden's Back to School Safely: Cybersecurity Summit for K12 Schools Event*, YouTube (Aug. 8, 2023), https://www.youtube.com/watch?v=sS41XlZQe7U.

[8] Hardeep Gulati*, PowerSchool Presents Cybersecurity Commitments at White House K-12 Cybersecurity & Data Privacy Event*, PowerSchool (Sep. 21, 2023), https://www.powerschool.com/blog/powerschool-presents-cybersecurity-commitments-at-whitehouse-k-12-cybersecurity-data-privacy-event/.

[9] *Global Privacy Statement*, PowerSchool (Oct. 4, 2024). https://www.powerschool.com/privacy/[https://web.archive.org/web/20241004033859/https://www.powerschool.com/privacy].

[10] *Id.*

collected Student Data beyond its contractually allowed purpose.

10. PowerSchool further misrepresented its data-security practices by publicly claiming it had signed the national Student Privacy Pledge. PowerSchool described the pledge as a commitment by "school service providers [to] take responsibility to both support the effective use of student information and safeguard student privacy and information security."[11] These statements were material, made with knowledge of or reckless disregard for their falsity, and intended to induce Plaintiff's reliance. Plaintiff did in fact rely on them to its detriment by entrusting sensitive PII to PowerSchool's platforms.

11. PowerSchool also misrepresented that it had developed and would publish a "Security by Design roadmap".[12] Despite repeated public statements, as of September 2025, PowerSchool has not published a Security by Design roadmap. As described by the Cybersecurity & Infrastructure Security Agency ("CISA"), a secure by design roadmap should "document changes made to [a software's development lifecycle] to improve customer security" and is published "[i]n the spirit of showing rather than telling" in order to "build confidence that the products are secure by design."[13] PowerSchool's failure to publish such a roadmap demonstrates that its prior representations were false, misleading, and made with reckless disregard for the truth.

12. PowerSchool knew school districts relied on its false security representations when selecting vendors. PowerSchool acknowledges that "[i]n the pursuit of cybersecurity enhancement, under-resourced schools must assess the security practices of technology vendors. Prioritizing vendors with recognized certifications such as SOC 2 or ISO 27001, becomes paramount. These certifications validate a vendor's commitment to rigorous security standards,

---

[11] *Student Data Privacy*, *supra* note 5.
[12] Gulati, *supra* note 8.
[13] *Id*.

ensuring that the integration of technology solutions doesn't compromise data integrity. By proactively selecting vendors such as PowerSchool with established credentials in cybersecurity, schools can bolster their defenses and establish a secure digital infrastructure for sustained educational success."[14]

13. PowerSchool knew these representations created the false impression that it maintained and followed robust data security standards, while purposefully concealing its inadequate safeguards and coinciding failure to implement a compliant incident response plan. PowerSchool intended school districts to rely on these assurances in selecting it as a vendor.

14. At all relevant times, Plaintiff was ignorant of the falsity of PowerSchool's statements and its Superintendent, IT personnel, and members of its school board reasonably relied on such statements and representations in deciding to contract with and continue using PowerSchool's SIS and related services. Plaintiff had the right to rely upon PowerSchool's representations given PowerSchool's dominant position in the K-12 education software market, its pervasive public claims of industry certifications and commitment to security, and its access to technical knowledge beyond Plaintiff's expertise.

**CONTRACTUAL MISREPRESENTATIONS**

15. PowerSchool expressly represented in Article IV, Section 4.3 of the Rhode Island 2024 DPA presented to and entered into by Plaintiff that "Provider [PowerSchool] shall require all of Provider's employees and agents who have access to Student Data to comply with all applicable provisions of this DPA with respect to the Student Data shared under the Service Agreement. Provider agrees to require and maintain an appropriate confidentiality agreement from each employee or agent with access to Student Data pursuant to the Service Agreement."

---

[14] *PowerSchool Information Security Report*, PowerSchool, https://go.powerschool.com/rs/861- RMI-846/images/Cybersecurity-Report.pdf?version=2&utm_medium=social//?wtime (last visited Sep. 2, 2025).

16. In Article V, Section 3 of the DPA, presented and entered into by Plaintiff in 2024, PowerSchool agrees to “utilize commercially reasonable administrative, physical, and technical safeguards designed to protect Student Data from unauthorized access, disclosure, acquisition, destruction, use, or modification. The Provider (PowerSchool) shall adhere to any applicable law relating to data security.”

17. In Article V, Section 4 of the DPA entered into by Plaintiff PowerSchool represents that in the event of a data breach, it shall "provide notification to LEA within the most expedient time possible and without unreasonable delay, but no later than five (5) calendar days, unless specified differently in Exhibit G, after the determination that a breach has occurred."

18. PowerSchool further represents in the 2024 DPA, that its "Cybersecurity Framework is aligned with the nationally recognized standard selected in Exhibit 'F'," specifically identifying the "Information technology — Security techniques — Information security management systems (ISO 27000 series)" published and maintained by the International Standards Organization.

19. In rendering services to Plaintiff pursuant to its contract, PowerSchool failed to abide by numerous standards set forth in the ISO 27000 series, including:

a. using data encryption to protect the confidentiality and integrity of private data, as stolen files were not encrypted at rest;
b. implementing secure authentication mechanisms such as multi-factor authentication, as no multifactor authentication or proper credential management was implemented;
c. promptly detecting, reporting, and responding to incidents involving a security compromise, as the system lacked adequate logging and monitoring as noted by post-breach assessments;
d. ensuring all employees receive appropriate security training , as staff were inadequately trained to handle sensitive PII;

e. conducting regular risk assessments and reviews of data security measures; and

f. implementing proper incident response procedures.

20. When its contract was made and renewed, the Plaintiff reasonably expected that PowerSchool would implement and maintain the ISO 27000 series standards in the interest of protecting the privacy of students, parents, and teachers as it had represented it would do. Plaintiff's agreement to pay PowerSchool all amounts due under contract and agreement to renew the PowerSchool Contract and was substantially based on PowerSchool's reciprocal promise to implement these standards.

21. In Article IV, Section 1 of the DPA PowerSchool represents that it "shall comply with all applicable federal, state, and local laws, rules, and regulations pertaining to Student Data privacy and security, all as may be amended from time to time."

22. PowerSchool failed to comply with FERPA requirements incorporated into the Rhode Island DPA. By failing to restrict access to FERPA-protected data and not ensuring appropriate safeguards, PowerSchool exposed education records to hackers and violated its status as a "school official" under FERPA, constituting improper disclosure of education records in violation of FERPA.

23. These contractual statements were material to Plaintiff's decision to rely on PowerSchool's services through which PowerSchool promised to host, manage, and transmit extremely sensitive PII. Plaintiff justifiably relied on those representations, believing (based on PowerSchool's reputation and express contractual assurances) that PowerSchool had in place real, effective safeguards.

24. Each of those representations was false or misleading when made (or when renewed) because, in truth, PowerSchool's practices failed to satisfy the contractual and industry benchmarks it promised. PowerSchool either never implemented, or implemented in deficient form, one or more of the promised

safeguards (e.g., encryption, access controls, monitoring, incident detection, subcontractor oversight, or prompt breach notification). PowerSchool withheld from Plaintiff the fact that it lacked adequate, tested incident detection and response capability, that it permitted unauthorized or unnecessary access by third parties, that its support/administrative portals lacked multi-factor authentication or rigorous logging, and that its subcontractor arrangements were loosely policed or insufficiently monitored.

25. Each of these contractual statements was material to Plaintiff's decision to entrust PowerSchool with sensitive PII. Plaintiff's reliance upon those contractual and pre-contractual misrepresentations was a substantial factor in causing it to contract with PowerSchool to process, store, and safeguard its student and teacher PII.

26. At all relevant times, Plaintiff was ignorant of the falsity of PowerSchool's DPA statements and reasonably relied upon them in deciding to contract with and continue using PowerSchool's SIS and related services. Plaintiff had the right to rely upon PowerSchool's representations given its dominant market position, its claimed certifications, and its superior knowledge. Even after performing its due diligence, Plaintiff did not and could not have discovered with reasonable diligence the falsity of the PowerSchool statements contained in the DPA.

27. PowerSchool made these misrepresentations intentionally, or with reckless disregard for their falsity, for the purpose of inducing Plaintiff to act. Plaintiff in fact relied on these statements by selecting and continuing to use PowerSchool, to its detriment.

**POST-DATA BREACH MISREPRESENTATIONS**

28. In response to its December 2024 breach, PowerSchool falsely, misleadingly, and deceptively represented to Plaintiff that the exfiltrated PII was deleted when it was not.

29. In January 2025, PowerSchool's Chief Information Security Officer ("CISO") Mishka McCowan hosted a webinar[15] attended by Plaintiff's Superintendent and IT personnel. During the session, PowerSchool's team, including its attorneys and senior security staff, discussed the breach specifics identified compromised systems, described "updated" security measures, and answered questions.[16] Critically, PowerSchool assured Plaintiff and other attendees that it represented that it had negotiated and paid a ransom to cybercriminals to delete the exfiltrated data. PowerSchool referenced a video allegedly provided by the hackers as proof of the deletion.[17]

30. PowerSchool knew or should have known that such representations were false or, at a minimum, made them with reckless disregard for the truth. As a self-proclaimed industry leader in student data security, PowerSchool knew, or should have known, that law enforcement agencies and cybersecurity experts uniformly discourage ransom payments. Ransom payments do not guarantee the deletion of breached data due to the ease of copying digital data and the prevalence of false video evidence. Ransom payments also encourage cyber criminals to continue their illicit practices.[18]

31. Despite this knowledge that PowerSchool claimed to have as a self-proclaimed industry leader in student data security, PowerSchool misrepresented to Plaintiff during the January 2025 webinar that the exfiltrated data had been deleted,

---

[15] Kevin Collier, *Children's data hacked after school software firm missed basic security step, internal report says*, NBC News (Jan. 31, 2025), https://www.nbcnews.com/tech/security/powerschool-hack-data-breach-protect-student-schoolteacher-safe-rcna189029.

[16] u/flunky_the_majestic, *Powerschool Breach webinar*, Reddit, https://www.reddit.com/r/k12sysadmin/comments/1hwthy5/powerschool_breach_webinar/.

[17] Collier, *supra* note 15.

[18] *See Ransomware Prevention and Response for CISOs*, Fed. Bureau of Investigation, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Aug. 22, 2025).

pointing to a video allegedly provided by the hackers as "proof."

32. In a statement sent to NBC 10 for a story on the effects of the data breach on Rhode Island schools, a Spokesperson for PowerSchool said the incident was contained and "We do not anticipate the data being shared or made public".[19]

33. Relying on PowerSchool's webinar representations and public statements, which were widely shared by news outlets, Plaintiff informed students, teachers, and parents that the incident was contained. Plaintiff would not have made these assurances without PowerSchool's guarantees.

34. Believing PowerSchool's representations and assurances that Plaintiff was not at risk for being "held hostage" or receiving a "ransom demand" because this was not the situation with the data breach, Plaintiff renewed its contract with PowerSchool Plaintiff Superintendent Mark Garceau said Plaintiff renewed its contract with PowerSchool for $73,000 in or about January 2025.[20]

35. In May 2025, schools in North Carolina, Canada, Oregon, and other states were targets of ransom demands from cyber criminals to prevent the publishing of PII, SPI, and PHI. The criminals provided a data sample that matched the data stolen and purportedly deleted in PowerSchool's December 2024 breach.[21]

36. PowerSchool confirmed the futility of their initial ransom in May 2025, writing to schools, including Plaintiff, that "[w]e sincerely regret these developments- it pains us that our customers are being threatened and re-victimized by bad actors."[22]

---

[19] Abbey Buttacavoli, *Nationwide PowerSchool data breach impacts Rhode Island school districts* (Jan. 9, 2025), https://turnto10.com/news/local/powerschool-data-breach-rhode-island-school-districts-impacted-jan-9-2024.

[20] *Id.*

[21] *See* James Coker, *PowerSchool Admits Ransom Payment Amid Fresh Extortion Demands*, InfoSecurity-Magazine (May 9, 2025), https://www.infosecuritymagazine.com/news/powerschool-ransom-payment/.

[22] *Id.*

37. PowerSchool's false assurances regarding the deletion of Plaintiff's exfiltrated data were material, made with knowledge of or reckless disregard for their falsity, and intended to induce Plaintiff's reliance. Plaintiff was ignorant of their falsity and justifiably relied on them to its detriment, including by making public communications that later proved false, thereby exposing Plaintiff to reputational harm, community mistrust, and additional costs of crisis management.

38. As a direct and proximate result of PowerSchool's misrepresentations regarding the December 2024 breach and the supposed deletion of stolen PII, Plaintiff has suffered damages, including but not limited to reputational injury, costs of issuing corrective communications, increased cybersecurity expenditures, staff expenditures, legal fees, outside consultant fees, and a loss of community and public trust.

39. PowerSchools' conduct constitutes fraudulent misrepresentation under Rhode Island law and Plaintiff is entitled to all damages and costs allowed by law.